LEXINGTON TOWNHOUSES COOPERATIVE *v.*
CITY OF WARREN

TOWNHOUSE MANOR COOPERATIVE *v.*
CITY OF CENTERLINE

EASTWICK SQUARE COOPERATIVE *v.* CITY OF ROSEVILLE

CLINTON COOPERATIVE *v.* CITY OF CLINTON

1. Taxation—Exemption—Low-Income Housing—Statutes—Construction of Statutes.

The words "shall be exempt" in a statute granting a tax exemption to low-income housing developments are mandatory and require a municipality to grant the exemption upon finding that the housing development meets the statutory requirements (MCLA § 125.1415).

---

Reference for Points in Headnotes
[1, 2] 51 Am Jur, Taxation § 528.

2. TAXATION—EXEMPTION—LOW-INCOME HOUSING—MUNICIPAL CORPORATIONS.

> The statute providing that low-income housing shall be exempt from taxation when the governing body of the municipality in which it is located makes certain findings by resolution grants no legislative discretion to the municipal governing body but only a ministerial duty of fact finding within clearly stated limits (MCLA § 125.1415).

Appeal from Macomb, Walter P. Cynar, J. Submitted Division 2 November 13, 1970, at Detroit. (Docket Nos. 8611, 8612, 8613 and 8614.) Decided April 21, 1971. Leave to appeal denied, 385 Mich 765.

Complaints by Lexington Townhouses Cooperative against the City of Warren and Macomb County Treasurer, Townhouse Manor Cooperative against the City of Centerline and Macomb County Treasurer, Eastwick Square Cooperative against the City of Roseville and Macomb County Treasurer, and Clinton Cooperative against the Township of Clinton and Macomb County Treasurer, for mandamus to compel defendants to give plaintiffs tax-exempt status. Summary and accelerated judgments for defendants. Plaintiffs appeal. Reversed.

*Gurwin & Snyder,* for plaintiffs.

*Sherman P. Faunce,* for defendant City of Warren.

*Rogensues & Richards,* for defendant City of Centerline.

*Ward & Campbell,* for defendant City of Roseville.

*Towner, Rosin & York,* for defendant Township of Clinton.

*Ray W. McPeters,* for defendant Macomb County.

*Tony Ferris,* for defendant Van Dyke School District.

*Labarge, Zatkoff & Dinning,* for defendant Roseville School District.

*Nunneley, Nunneley, Hirt & Rinehart,* for defendant Centerline School District.

*Mather, Glime & Daoust (Gary W. Wilds,* of counsel), for defendant Frazer School District.

Before: V. J. Brennan, P. J., and Levin and Peterson,* JJ.

Peterson, J.  These consolidated cases involve the tax exemption provision of the State Housing Development Authority Act, PA 1966, No 346 (MCLA § 125.1401 *et seq.*; Stat Ann 1970 Cum Supp § 16.114[1] *et seq.*), which was construed by a panel of this Court in *Colonial Townhouse Cooperative, Inc.* v. *City of Lansing* (1970), 25 Mich App 24, and with which decision we are unable to agree.

The title of the act reads as follows:

"An act to create a state housing development authority; to define the powers and duties of the authority; to establish a housing development revolving fund; to authorize loans to qualified nonprofit sponsors and municipalities; *to provide tax exemption;* and to authorize payments in lieu of taxes by nonprofit housing corporations." (Emphasis supplied.)

Several incentives were provided by the legislature to the construction of low and moderate income

---

* Circuit judge, sitting on the Court of Appeals by assignment.

nonprofit housing, including a property tax exemption with service fee payments in lieu thereof. The pertinent portion of § 15 reads as follows:

"When the governing body of any municipality in which a housing project of a nonprofit housing corporation or consumer housing cooperative is or will be located by resolution *finds* that the housing project is or will be financed with a federally-aided mortgage, or with a loan from the authority under chapter 2, to serve low income or moderate income persons, then the housing project shall be exempt from all taxes of the state, or any city, village, township or other political subdivision or public body or taxing district."

Plaintiffs sought exemption under § 15 for tax year 1968, applying to the municipalities and also to the boards of review during March.[1] Their requests being unsuccessful, actions in mandamus were brought. Motions for summary judgment and accelerated judgment were filed by defendants and granted by the circuit court. The question is whether the statute gives a municipality a discretionary power to grant tax exemptions to such housing developments meeting the statutory requirements if and when it chooses to exempt them, or whether the legislature itself has granted a tax exemption and merely substituted an exemption certification by the municipal body for the usual assessor's determination of exempt status. The first is legislative and discretionary and beyond the

---

[1] We find no merit in the contention of defendants that application for exemption had to be made before December 31, 1967. It is true that taxable status and valuation are fixed as of the "tax day" but the tax roll is not final until after the last meeting of the board of review. MCLA §§ 211.30, 211.31 (Stat Ann 1970 Cum Supp §§ 7.30, 7.31). We also reject the contention that plaintiffs, having gone to the board of review and appealed to the State Tax Commission, are estopped to sue or are somehow bound by an election of remedies theory.

scope of mandamus; the latter is administrative, imposing a clear legal duty to act for which mandamus will lie. *Toan* v. *McGinn* (1935), 271 Mich 28; *Leininger* v. *Secretary of State* (1947), 316 Mich 644. In *Colonial, supra,* a panel of this Court reached the first conclusion and affirmed the denial of mandamus. We differ.

It seems to us that the clear language of § 15 and of the act's title is to state a legislatively created exemption. Grammatically and legally, the words "shall be exempt" refer to property found to meet certain eligibility qualifications. The language is mandatory and not permissive. It nowhere indicates that a municipal governing body "may" grant an exemption, nor does it set any standards or tests for the exercise of legislative discretion. The statute refers to a finding of eligibility by "resolution", whereas municipal bodies exercise legislative powers by ordinance.

If, instead of reading

"When the governing body of any municipality * * * by resolution finds * * * [statutory facts] * * * then the housing project shall be exempt * * * ",

the act had read

"When the *assessing officer* of any municipality * * * finds * * * [statutory facts] * * * then the housing project shall be exempt * * * ",

could any different conclusion be read as to the Legislature's intent? Regardless of who makes the finding, the scope of that finding is purely factual, *viz.,* (1) that there is or will be such a project within the municipality; and, (2) that the project meets certain requirements plainly stated. This hardly constitutes a grant of discretionary authority. Con-

strued as a legislative grant of exemption, with a
purely fact-finding function imposed on the munici-
pal body, the language of § 15 is consistent with the
title of the act which states a purpose "to provide
tax exemption"; *i.e.*, it is the Legislature which
grants the exemption by the act, and not the muni-
cipal body by a determination that a particular
taxpayer meets the legislatively stated conditions
for exemption.

We think the language of the statute is plain.
Beyond this, we find merit to the proposition re-
jected in *Colonial*, that to hold otherwise would give
municipalities an arbitrary authority to grant or
withhold the exemption given by the Legislature.[2]
In *Colonial*, the Court said, p 27:

"The statute involved is a section of the state
housing development act, the purpose of which was
to assist in the supply of low or middle income hous-
ing. The statute does not require that the govern-
ing authority adopt the necessary resolution for a
project which qualifies under the act for tax exemp-
tion. If it did, it would remove from the municipal
authority control over its revenue. The statute
envisions a judgment on the part of the municipal
authority between the loss of tax revenue by grant-
ing the exemption and the need for and benefit of a
low or middle income project. This does not con-
stitute a grant of arbitrary authority to grant or
withhold the benefit of tax exemption. Nor does
this case involve an arbitrary exercise of the author-
ity granted, as would be the case if exemption was
granted to one qualified project and denied to
another."

This must be read as giving the municipality
independent authority to determine either that all

---

[2] Query: Whether the Legislature may delegate *any* authority,
arbitrary or otherwise, to create exemptions? See notes 3 and 4.

qualified projects would be granted exemption, or that none would be exempt since the uniformity clause of the Constitution would prevent exemption for some but not for all.[3]  One difficulty with this proposition is that nowhere in the title to the act or in § 15 is there language suggesting that the municipality was intended to have the power to exercise such a policy judgment.  Further, the rationale that such must have been intended in order to preserve to "the municipal authority control over its revenue" assumes a power which does not exist in municipalities as to the *ad valorem* property tax. Taxability and exemption are historically[4] matters for the Legislature and no instance is found in the general property tax act, PA 1893, No 206, as amended (MCLA § 211.1 *et seq.*; Stat Ann 1960 Rev § 7.1 *et seq.*), or related statutes in which local units of government are given authority to determine matters of taxability and exemption.

Holding that the statute grants no legislative discretion in the municipal governing bodies but only a ministerial duty of fact finding within clearly stated limits, we reverse and remand for further proceedings consistent herewith.

All concurred.

---

[3] Such a construction would solve the uniformity problem only within a municipality.  County and state uniformity would be impossible if exemption could be created locally.

[4] It appears likely that taxability and exemption of property is not only historically but also constitutionally a matter of legislative control.  The people of Michigan by their Constitution have mandated the legislative imposition of an *ad valorem* property tax. Article 9, § 3, of the Constitution of 1963 provides: "The legislature shall provide for the uniform general *ad valorem* taxation of real and tangible personal property *not exempt by law*." (Emphasis supplied.) We do not decide the question of whether the Legislature *could constitutionally* delegate the power to exempt to municipalities, as in the construction of § 15 adopted by *Colonial*, the question not having been raised in that case or this.  *Cf. Colony Town Club* v. *Michigan Unemployment Compensation Commission* (1942), 301 Mich 107; *City of Detroit* v. *Detroit Commercial College* (1948), 322 Mich 142.