75390. ROBERTS v. J.A.T.T. TITLE HOLDING CORPORATION.
(366 SE2d 297)

BIRDSONG, Chief Judge.

J.A.T.T. Title Holding Corporation (JATT), the appellee-defendant, is a non-profit corporation which owns real property located at 5675 Tulane Drive in Atlanta. A building thereon houses a trade school, the Mechanical Trades Institute. This school was established and maintained jointly by the Plumbers and Pipefitters Local Union 72 (Local 72) and its International Union. The school is operated by the Joint Apprenticeship and Training Trust (JATT). The Trust is composed of an eight-member Board of Trustees, consisting of contractors in the plumbing, pipefitting or air conditioning industry, and members of Local 72. Periodically, the Local Joint Apprentice and Training Committee determines when the courses are to be given and the number of applicants which will be accepted in their "apprenticeship program." Applicants must sign a "Pipe Trades Apprenticeship Form" and serve a four-year apprenticeship in the trade for which they are trained. Each person admitted to the trade school receives 864 hours of instruction (5:30 p.m. to 10:15 p.m.) over the four-year period, and is required to complete 8,000 hours of "on-the-job" training in his chosen trade with plumbers and pipefitters to obtain journeyman status and licensing as a plumber-pipefitter. An apprentice is paid 45 percent of a journeyman's wage as a starting salary. All graduates of the trade school are not required to, but usually do, become members of Local 72. The school's four-year curriculum includes: "Math . . . Accident Prevention . . . Use & Care of Tools . . . Draw-

ing & Plan Reading . . . Oxygen-Acetylene Welding . . . Science & Mechanics . . . Basic Electricity . . . General Piping . . . Welding Electric . . . Accident Prevention . . . Heating (I and II) . . . Electricity . . . Refrigeration (I and II) . . . Air Conditioning (I and II) . . . Pipe Drawing & Plan Reading . . . Controls & Instrumentation . . . Mechanical Codes . . . Water Supply . . . Mathematics . . . Drainage . . . Repairing & Service Lab . . . Plumbing Code . . . Plumbing Fixtures & Appliances . . . Codes . . . Gas Installations. . . ."

JATT contends this property is used exclusively for educational purposes. Pursuant to OCGA § 48-5-41 (a): "The following property shall be exempt from all ad valorem property taxes in this state: . . . (6) All buildings erected for and used as a college, incorporated academy, or other seminary of learning. . . ." In 1975 JATT requested and was granted exemption from ad valorem taxation on the basis of their claim that the Mechanical Trades Institute was a "seminary of learning." In 1982 the tax commissioner reviewed the former determination and denied ad valorem exemption. JATT brought this action seeking exemption and the trial court granted summary judgment to the tax commissioner. JATT appealed to this court and we reversed, holding that the grant of summary judgment was procedurally premature when discovery had not been completed. See *J.A.T.T. Title Holding Corp. v. Roberts*, 173 Ga. App. 902 (328 SE2d 770). Following remand, discovery was completed and both parties moved for summary judgment. Appellant's supplementary responses to discovery were not a factor in either party's motion. Essentially the same facts were before the court but the trial court granted JATT's motion for summary judgment and denied the tax commissioner's motion. Commissioner Roberts brings this appeal. *Held*:

"Taxation . . . is the rule, and exemption from taxation the exception. [Cits.] And exceptions are made, not to favor the individual owners of property, but in the advancement of the interests of the whole people. Exemption, being the exception . . . to be valid, must be expressed in clear and unambiguous terms, and, when found to exist, the enactment by which it is given will not be enlarged by construction, but, on the contrary, will be strictly construed." *Mundy v. Van Hoose*, 104 Ga. 292, 297 (30 SE 783). Hence, at issue is whether the Mechanical Trades Institute is a "seminary of learning . . ." as that term is used in OCGA § 48-5-41.

Our Supreme Court, in *Camp v. Fulton County Med. Society*, 219 Ga. 602 (135 SE2d 277), where the Fulton County Medical Society owned and operated a building known as "The Academy of Medicine" in which various medically related organizations held meetings and seminars, found that the "petitioner is not operating a college, incorporated academy, or other seminary of learning within

the meaning of" the Code. The same question was posed in *American Institute of Indus. Engineers v. Chilivis*, 236 Ga. 793 (225 SE2d 308), when the trial court found that plaintiff's membership was composed of approximately 20,000 dues-paying industrial engineers and that the primary purpose of the national headquarters building located in Gwinnett County was "to promote the advancement of industrial engineering by serving the needs of the industrial engineers . . . and that appellant fulfills its primary purpose by distributing technical publications to its membership and through seminars and other educational workshops." Id. at 793. The trial court found that the appellant did not operate a college, seminary, or other institution of learning and the Supreme Court concluded that although the organization had a very worthy purpose and contributed to the advancement of engineering knowledge, those purposes did not bring it within the statutory exemption from ad valorem taxation. Id. at 794.

However, in *Rabun Gap-Nacoochee School v. Thomas*, 228 Ga. 231, 233 (184 SE2d 824), the court held that a school whose purpose was " 'to educate and train men and women, boys and girls, living in mountain regions and other needy sections . . . in agriculture, economy and good citizenship . . . under Christian auspices . . .' " was a seminary of learning. Also, in *Elder v. Atlanta-Southern Dental College*, 183 Ga. 634 (189 SE 254), evidence supported the finding that "the college was chartered as a purely educational institution:" (Id. at 638) for the teaching of dentistry. The issue of whether or not the college operated at a profit, and the trial court's finding that it was not, was approved on appeal, and the Supreme Court held that "being an institution the physical properties of which are not to be used for purposes of private or corporate profit or income . . . the college building in question here . . . is exempted from taxation. . . ." Id. at 639.

In these cases, the issue of whether the various organizations came within the definition of "a seminary of learning" was not discussed in depth. Similar tax exemption statutes of other states have spawned a considerable amount of litigation. Analysis of those foreign decisions reveals approval of tax exemption of property of private institutions and organizations for those entities which provide a substantial part of educational training that otherwise would be furnished by publicly supported schools and colleges. Since state taxes are used for support of state schools offering general educational subjects, a private school offering substantially the same curriculum would be entitled to the tax exemption because it is providing general educational subjects that otherwise would have to be taught by the State. *State v. Northwestern Vocational Institute*, 45 NW2d 653, 655 (Minn. 1951). Hence, generally two things are necessary to qualify a private institution for tax exemption as a seminary of learning: (1) a

course of study which fits into the general scheme of education found in state institutions, supported by public taxation, and (2) a course of study that substantially lessens what otherwise would be a governmental function or obligation. *Coyne Elec. School v. Paschen,* 146 NE2d 73, 77 (Ill. 1957). However, if the general educational function of the private school is merely incidental to activities other than general education, the tax exemption may be denied. *NRA Special &c. Fund v. Bd. of County Commrs.,* 591 P2d 672 (NM 1979).

All institutions designating themselves as "institutes, colleges, or seminaries of learning" do not automatically fall within a tax exempt status. *State v. Northwestern Vocational Institute,* supra. Thus, where the primary purpose of the education is for a trade or profession, to have such realty declared exempt from taxation on the ground that it is a seminary of learning, there must be a showing that the school offers an education as to which there is enough general academic subject matter to qualify as a reasonable substitute for the program of courses pursued by a student at a comparative level of the public system, though it need not be as broad as that offered by the public educational system, and may feature a particular professional vocation or trade. *Graphic Arts &c. Foundation v. State,* 59 NW2d 841 (Minn. 1953).

In summary, taxation is the rule, exemption is the exception. Taxation exemptions are to be strictly construed. The basis for tax exemption for private seminaries of learning is the accomplishment for the "whole people" (*Mundy,* supra at 297) of a "public purpose." *State v. Northwestern Prep. School,* 83 NW2d 242, 246 (Minn. 1957). Such "public purpose" to obtain tax exemption status is that of providing a substantial part of general educational training which otherwise would have to be furnished by publicly supported schools and colleges. Id. Accordingly, a substantial portion of the curriculum of a seminary of learning must be similar to the curriculum found in publicly supported schools of learning to qualify for tax exemption. Id.

In the instant case, only a minor portion of the 858 hours of instruction was offered in general education course and from their location in the curriculum, it is evident they were vocationally oriented and only incidental to the main purposes of the curriculum. Those main purposes are: (1) to educate and train an individual in a particular trade, (2) to provide trained apprentices to contractors participating in the school's program, (3) to provide such apprentices at a stated salary which is 45 percent less than the wage of a journeyman — and these latter two purposes are required by contract before acceptance of the individual in the school, and last but not least (4) to provide for membership in the union for that particular trade, although membership is not mandatory.

The legislative intent for providing tax exemption for "a college,

incorporated academy, or other seminary of learning," is to provide tax relief for private institutions providing general education to the general public. That portion of the curriculum of the Mechanical Trades Institute devoted to general educational purposes was oriented to the trade application of that subject, and was incidental to the primary purpose of training an individual in that trade, and providing trained apprentices to contractors participating in their program, at a controlled wage. Three of these multifaceted purposes for the existence of the Mechanical Trades Institute are outside the one purpose for tax exemption.

Hence, we hold the evidence demands, as a matter of law, that the Mechanical Trades Institute is not a "seminary of learning" as that term is used in OCGA § 48-5-41 (a) (6). The judgment of the trial court is reversed and the case is remanded with direction to enter summary judgment for appellant.

*Judgment reversed and case remanded with direction. Deen, P. J., and Pope, J., concur.*

DECIDED JANUARY 12, 1988 —
REHEARING DENIED FEBRUARY 22, 1988 —

*Marva Jones Brooks, Jeff S. Klein,* for appellant.
*Charles E. Elrod, Jr., Randall A. Constantine,* for appellee.